United States District Court
District of Massachusetts - Boston Division

Martin Stephen Gottesfeld
v.                                      Docket No.: 18-cv-10376-FDS
John Gibbons

Motion To Dismiss The Indictment In U.S. v. Gottesfeld (16-cr-10305-NMG) On 4th Amendment Grounds

Martin Stephen Gottesfeld (petitioner) moves the court order the dismissal of the indictment in the one in U.S. v. Gottesfeld (see 16-cr-10305-NMG-D.E. 28 on 10/19/2016) because it is the metaphorical fruit of the poisonous tree planted with an unconstitutional search (see 14-MJ-2234-MBB) which ought to be suppressed.

1. The Petitioner's Right To A Neutral And Detached Warrant-Issuing Authority Was Violated

The unconstitutional search and seizure warrant issued by The Honorable U.S. Magistrate Judge (USMJ) Marianne B. Bowler on September 29th, 2014 (see 14-MJ-2234-MBB) and which is sealed from public view never should have been issued because the magistrate has pecuniary conflicts of interest. Thus, the warrant violated the petitioner's right to have a neutral and detached issuing authority screen the warrant

- Page 1 of 10 -

application.

The petitioner notes that the affidavit sworn in support of the warrant application by FBI special agent Michael W. Tunick specifically and explicitly makes mention of The Wayside Youth and Family Support Network (Wayside), Boston Children's Hospital (BCH), "Harvard hospitals", an alleged interruption of research at the aforementioned BCH (which is affiliated with Harvard Medical School) as well as alleged disruption(s) of the computer network which all Harvard hospitals use to communicate (see affidavit in 14-MJ-2234-MBB, specifically paragraphs 8 and 27). Many of these were again mentioned at the petitioner's detention hearing (see 16-cr-10305-NMG D.E. 19 on 5/23/16 page 41 line 8, page 55 line 16, page 51 line 15), over which the same magistrate, The Honorable Marianne B. Bowler, also presided.

According to her official court biography, The Honorable U.S. Magistrate Judge Marianne B. Bowler worked as a research assistant at Harvard Medical School before embarking on her legal career and she is currently married to Mark Pfeffer, who is a professor at Harvard Medical School as well as a paid practitioner at a different Harvard-affiliated hospital. The principal alleged victim in the petitioner's case is BCH - Harvard Medical School's primary pediatric affiliate. In fact, so close is the relationship between Harvard Medical School and BCH that the email accounts of BCH personnel to which the petitioner stands accused of interrupting access have "harvard.edu" in their addresses. These email

- Page 2 of 10 -

accounts were again mentioned at the petitioner's detention hearing.

Enough of the above must have been known to the Honorable Magistrate Judge Marianne Bowler at the time of the warrant application and she therefore was required to refer the matter to a different issuing authority rather than approve the government's request.

Further, the petitioner notes that The Honorable Magistrate Judge Marianne Bowler is an emeritus director of the Boston Foundation, an organization which raises money on its website for alleged victim Wayside.

The facts above clearly demonstrate a pecuniary interest and preclude The Honorable Magistrate Judge Marianne B. Bowler from serving as a neutral and detached issuing authority in the above matter. Further, the vast majority of the above was clearly known to the magistrate at the time she issued the warrant and due to her long and distinguished career on the bench as well as elsewhere it almost certainly was known to the government as well. Therefore, in addition to other reasons detailed below, The Good Faith Exception ought not apply and the results of the unconstitutional search should be suppressed. The fruit of that poisonous tree, the indictment which followed, should be dismissed and, if only to prevent future abuses of discretion, it should be dismissed with prejudice.

## 2. The Government Provided False Information To The Warrant-Issuing Magistrates

The magistrates who issued both the search and seizure warrant as well as the arrest warrant for the petitioner were both misled by the government in ex-parte proceedings. In both instances the same affiant, FBI Special Agent Michael W. Tunick swore that a YouTube video allegedly uploaded by the petitioner called for attacks on the network of Boston Children's Hospital (BCH) and that the video was accompanied by "detailed" information on the hospital's computer server(s) (see 16-cr-10305-NMG D.E. 3 on 2/16/16 and the affidavit in 14-MJ-2234-MBB). However, the affiant reasonably should have known that neither is true.

In fact, FBI Special Agent Jeffrey Williams later admitted under cross-examination that the specified video did not call for an attack (see 16-cr-10305-NMG D.E. 19 on 5/23/16 page 44 lines 19-25). He also detailed that the IP address and server information contained in the video was publicly accessible (see Ibid. page 45 lines 1-17). The petitioner cites his years of experience as a Sr. Systems Engineer, including on the Infrastructure Services Team of a publicly-traded IT consultancy, when he assures The Court that such information is customarily considered to be cursory while the vast majority of computer security experts would consider "detailed" information to include data such as patch levels, speed of communications lines,

- Page 4 of 10 -

directory enumerations, etc. If the petitioner or another diligent professional were retained to survey a customer's network for "detailed" server information they could not in good faith submit an invoice for having done so based on gathering such limited data. The petitioner would welcome the opportunity to directly examine Special Agent Williams again on the stand regarding this matter.

In the meantime, the petitioner notes that by misleading the issuing magistrate into believing that the video explicitly calls for attack(s) the government reduced the chances of the video being considered protected speech and enhanced the likelihood of a finding of probable cause. The reality of the presentment of this false information on multiple sworn affidavits ex-parte directly conflicts with the theory that the government was acting in good faith and nothing of which the petitioner is aware in the intervening period had occurred that could otherwise explain the discrepancy between the government's sworn affidavits and the later conflicting testimony of Special Agent Williams — except that at the time of the latter the warrants had already been issued in secret and executed so it may no longer have been necessary in the government's eyes to maintain those facades.

Regardless, Good Faith requires more. It requires better.

In concert with the grounds, which directly follow, it is entirely possible that a neutral and detached issuing

authority would have refused to grant these warrants as what would remain after excising this and other information in controversy from the affidavits would not have supported a finding of probable cause.

### 3. The Government Made Material Omissions Of Fact In Its Warrant Applications

The magistrates who issued both the search and seizure warrant as well as the arrest warrant for the petitioner were both missing relevant information of which the government was aware but which it materially omitted in ex-parte proceedings and which would have precluded a finding of probable cause, especially if the government hadn't also provided false information.

The Youtube video which the government alleges that the petitioner uploaded urges the public to make phone calls and write letters to government officials to petition for the redress of a serious and potentially deadly grievance, which many members of the public in fact did. Yet while the government was sure to make unreliable claims that the video contained things which it did not, the government omitted that it was aware that the video helped to organize this Constitutionally-protected activity (see 16-cr-10305-NMG D.E. 19 on 5/23/16 page 43 line 25 - page 44 line 11). In fact, nowhere in its copious filings did the government mention the First Amendment at all, and this

- Page 6 of 10 -

can hardly be coincidental. However, tellingly, while agent Michael Tunick was executing the resulting search warrant he freely admitted that the video was "protected speech."

Regardless of the government's opinion as to the accuracy or implications of the above and other parts of the video, it was supposed to be up to the warrant-issuing authority to determine the effect of such on a finding of whether or not there was probable cause. The strategic omission from the government's sworn affidavits of such information as well as the false statements included in them must be deterred and they directly contradict any assertion of good faith.

The petitioner also notes that the government didn't disclose to the warrant-issuing magistrates that the video alleges that a young girl named Justina Pelletier was being tortured both physically and mentally and that it contains imagery of Justina in a wheelchair with her hair falling out. Article VI of The Constitution holds that treaties ratified by the United States are the "Supreme Law of the Land," and the petitioner believes that the reasoning for this choice by The Founders was similar to that behind the Full Faith and Credit Clause. The Convention Against Torture is a Senate-ratified treaty. This, plus plain old common sense, indicate that any act intended to stop the torture and save the life of a child wouldn't be a crime at all, as the common law concepts of justification, necessity and/or the defense of others would apply, but again this should have been up to a neutral and detached issuing authority to determine.

Similarly, the government failed to note in its sworn filings that the video mentions standing up for a child " in her darkest hour" and implores the public to exert pressure in order "to save Justine's life."

Additionally, while the government was sure to note on its affidavits that criminals frequently use technologies like VPN and TOR to mask criminal activity, it omitted that the vast majority of the users of these technologies are not in fact criminals and that IT professionals frequently use these tools as part of their legitimate profession. The petitioner recalls that a car with federal government license plates followed him home from work one afternoon shortly before the unconstitutional unconstitutional search of his residence. If this was meant to have been covert surveillance as part of the investigation which led up to the warrant then the government knew that the petitioner worked at a technology company, but did not advise the issuing magistrate of such nor of the therefore greater than normal likelihood that his use of VPN and TOR technologies was lawful.

Again, good faith requires more.

4. **The Government Provided False Information To The PRTT-Issuing Magistrate And Exceeded Its Statutory Authority**

In its application for a Pen Register/Tap and Trace (PRTT) device for the petitioner's Internet connection (see

- Page 8 of 10 -

16-cr-10305-NMG D.E. 78 Exhibit B), the government swore that TCP and UDP port numbers do not qualify as content under the relevant statute, 18 U.S.C. § 2510(8), which states that "'[C]ontents', when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport or meaning of that communication." However, the government's assertion that TCP and UDP port numbers are not content under the above definition is so obviously incorrect that the only 2 possible explanations for such a statement are that it was either a blatant lie or that the Boston FBI Field office's Cyber-Crime Squad, of which the affiant was apparently a member, lacks the knowledge typically imparted to network technicians at or below the Associates Degree level.

Since the petitioner first raised this issue (see 16-cr-10305-NMG D.E. 90 on 10/23/17 pages 10-15), it has also been raised in a well-publicized application for certiorari by Ulbricht which has solicited several amicus briefs. For brevity sake, especially given pages 10-15 of D.E. 90 of 16-cr-10305-NMG, the petitioner will only reiterate here that TCP and UDP port numbers are distinct entities from IP Addresses which do not identify the responsible party of a communication when observed as the government was doing with its PRTT device and they are not customarily used in Internet routing decisions. Further, they tell a great deal about "the substance, purport or meaning" of communications. Indeed, without knowing the

TCP and UDP port numbers, the government would have only been able to say on its warrant applications that the petitioner was using one of the various services offered by Rise Up as opposed to specifically VPN and likewise, at best, that the petitioner was speaking to machines listed as TOR nodes but not that he was specifically using TOR as opposed to for example performing systems maintenance on them.

Once again, this mistake by the government seems hardly accidental and speaks against the likelihood of "good faith" on the behalf of the government, especially when viewed together with the other issues raised herein.

Respectfully Mailed And Submitted On 3/5/18,

Martin G.

Martin S. Gottesfeld, ID #71225
FCCF, Unit H1, Cell 224
26 Long Pond Road
Plymouth, MA 02360